# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JULIE A. MASTIN,

      Plaintiff,

v.

      CASE NO. 08-13369
      HONORABLE DENISE PAGE HOOD

SYSCO FOOD SERVICES OF DETROIT, LLC,

      Defendant.
      _____/

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SCHEDULING STATUS CONFERENCE

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment, filed on March 27, 2009. Plaintiff filed a Response to Defendant's Motion for Summary Judgment on April 24, 2009. On April 30, 2009, Defendant filed a Rebuttal Brief in Support of Motion for Summary Judgment. A hearing was held on May 13, 2009.

**II.    STATEMENT OF FACTS**

On or about July 21, 2008, Plaintiff commenced the instant action in Wayne County Circuit Court, alleging violations of the Family Medical Leave Act (FMLA), 29 U.S.C. 2611 *et seq.*, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq.* Defendant timely removed this action on August 4, 2008, pursuant to 28 U.S.C. § 1441(b), as this is an action arising

1

under the laws of the United States.

In Plaintiff's First Amended Complaint,[1] Plaintiff alleges that she was wrongfully terminated from her employment with Defendant, Sysco Food Services of Detroit, LLC (Sysco) in violation of the FMLA, the ERISA, Michigan's Elliot Larsen Civil Rights Act (ELCRA), and Title VII.[2]

Plaintiff began employment with Sysco on or about October 2, 2000 as a Marketing Communications Specialist, a position in Sysco's Marketing Department. Sysco is in the business of selling food products, food service hardware (such as dishwashers), the chemicals used in the operation, and service contracts for the equipment. At the time that Plaintiff was hired, Sysco employed one other Marketing Communications Specialist, Julianne Moore. When Plaintiff joined the Marketing Department, she became the fourth employee in a then-growing department. There was a Vice-President of Marketing, his assistant, Plaintiff and Moore. A "Marketing Services Coordinator," Jennifer Garrett was hired the same month as Plaintiff. Others later joined the department. Three "Marketing Assistants" and two "Marketing Coordinators" were added and Garrett was promoted to Marketing Services Manager.

The primary responsibility of Plaintiff's job was graphics design. Plaintiff's duties included design, creation, and printing of graphics arts materials for customers, such as menus, event signs, comment cards, fliers, "sluggers/slammers" (menu inserts touting high profit specials), and "table

---

[1] On November 4, 2008, this Court entered a Stipulation and Order permitting Plaintiff to file an Amended Complaint to add Count IV, gender discrimination, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e, *et seq.*

[2] On March 10, 2009, this Court entered a Stipulation and Order dismissing with prejudice Count II of Plaintiff's Amended Complaint. As such, the remaining claims in Plaintiff's Amended Complaint include: Count I, Violation of the FMLA; Count III, Gender Discrimination under the ELCRA; Count IV, Gender Discrimination under Title VII.

tents" (similar signage on tables). Sysco provided these graphic design services as a free service to all of its customers. Plaintiff's other duties throughout the years included creating in-house corporate artwork and design for fliers, brochures, ads and signage, posting items on Sysco's intranet, participating in customer facility visits which led to restructuring of menus and assisting with food shows. Plaintiff asserts that during her employment, her job performance was exemplary, and at various times she performed nearly all of the jobs in her department.

According to Defendant another job position relevant to this matter is that of "Marketing Associate," which is apparently somewhat of a misnomer as it is not within the Marketing Department and is an outside sales position. Sysco has sales districts from northern Ohio to Bay City and Michigan's Thumb-region.

At sometime prior to Plaintiff's termination, Sysco began discontinuing many activities formerly performed by the Marketing Department. For instance, it eliminated its big food shows, and now conducts only one small show per year for about seventy five (75) to one hundred (100) customers. Sysco also stopped using catalogues. Because of the decline in activities, the number of positions in the Marketing Department declined, the Vice-President position was reduced to a Director position, and not re-filled when the incumbent left Sysco in 2005, his assistant was released and the position was not replaced. The Marketing Assistant positions were also eliminated.

During the course of her employment, Plaintiff exercised her rights to take FMLA leave. In 2002, Plaintiff took FMLA leave for the birth of her first daughter. Plaintiff also took twelve weeks of FMLA leave in July 2006 when her second daughter was born. On or about November 20, 2007, Plaintiff began a FMLA leave for hip surgery resulting from injuries she suffered in an automobile accident. At this time, Plaintiff was the sole Marketing Communications Specialist, with two other

positions, Marketing Services Coordinator and Marketing Coordinator, encompassing the entire department.

Also relevant to this matter is that a company known as Focus Marketing developed a product known as "My Menu Lab," which permitted anyone to plug information into templates offered for menus, sluggers, and table tents, among other marketing materials. Ultimately, in September 2007, Sysco decided to use the "My Menu Lab" program for its customers.

Sean McCausland was promoted to Senior Vice President of Sysco in August of 2007. He was put in charge of the Marketing Department in November of that year. By late November of 2007, McCausland had conducted an analysis of the current jobs, the amount of work that needed to be done, and the people in the Marketing Department. It is Plaintiff's contention that this 'analysis' was a sham. In support she relies on the fact that McCausland testified that he had no notes or other documentation regarding his analysis. *See* Plf.'s Resp., Ex. B, Dep. Tr. of Sean McCausland at 30. Specifically, he stated that:

> I would take notes, obviously, I would do the analysis. I don't necessarily take every piece of paper I do the analysis with and put it in a file and save it. No. I don't do that. The analysis was done on my part the way I analyze personnel, head count, but I don't—didn't save that and put it in a file.

*Id.* McClausand recognized that adoption of the "My Menu Lab" program had greatly diminished Plaintiff's job responsibilities. After dismal holiday sales in 2007, President and CEO of Sysco, Tom Barnes, issued a directive to senior staff to cut personnel. On January 14, 2008, McCausland recommended by memo to Barnes that Plaintiff's position be eliminated. The memo stated in relevant part:

> After a detailed evaluation of the current needs of the department versus what this position entails, it has been determined that the need for a Marketing Communication Specialist is no longer needed or necessary. Accordingly, I am recommending that

4

this position be eliminated, effected [sic] immediately.

*See* Plf.s' Resp., Ex. S.

Plaintiff returned to work on February 12, 2008, within her allotted twelve weeks of FMLA leave. Plaintiff claims that when she returned, there was a pile of work waiting for her, and that she had been informed by the other staff in the department, that work had to be turned away because the staff was too busy. *See* Plf.'s Resp., Ex. A, Dep. Tr. of Julie Mastin at 128, 157. Plaintiff's co-worker, Sarah VanderZyl, testified that while Ms. Mastin was gone, she was "very busy" and was sure that she worked some overtime, and there were assignments/projects that the Marketing Department had to turn back because they were too busy. Specifically, at her deposition, Ms. VanderZyl stated that:

> Q. While Julie was on leave were there assignments or projects that came into the marketing department that were turned back because the department was too busy?
> A. Yes.
> Q. And what types of projects were those?
> A. Color menu designs.
> Q. And while Julie was on leave–well strike that Who would keep track, if anybody of the projects that came in that couldn't be done?
> A. Honestly, it was just kind of a conversation that we were not doing full menus anymore until she got back or, you know, we were slowed down because–it actually said the emails that, you know, some parts of our website were not going to be updated until she came back, so I would say it was known that we were slowing down.

*Id*., Ex., Dep. Tr. of Sarah VanderZyl at 28.

On the day Plaintiff returned to work, Defendant informed her that her position was being eliminated and her employment was terminated. Plaintiff asked Defendant if there were any other positions within the company for which she could be considered, and was told 'no.' Defendant disputes this and claims to have informed Plaintiff that the only positions that were available were

5

Marketing Associate or outside sales positions. According to Defendant, Plaintiff expressed no interest in applying for such a position. Later Plaintiff learned that outside sales positions were available and Plaintiff applied for a position as an outside sales representative. She was not offered the position. Plaintiff also asserts that similarly situated male employees, who were also employed in Plaintiff's department, were allowed to transfer to other positions with Defendant. Defendant argues that Plaintiff did not advise the company that she was interested in the Detroit sales representative position until March 20, 2008, even though she was informed of the opening the day she was informed her position was eliminated. Defendant maintains employment had already been offered to John Vida on March 4, 2008. Vida had accepted the position at least fourteen days prior to Plaintiff's application for the same position.

Ms. Vanderzyl was not eliminated from the Marketing Department. In fact, her position in the Merchandising Department had been eliminated in May of 2007, and she was transferred to the Marketing Department. Plaintiff believes that her position was chosen for elimination because Ms. Vanderzyl was young, had previously expressed that she is career oriented and not interested in having children and had never taken FMLA leave. Shortly after Ms. Mastin's termination, Ms. Vanderzyl was given a five percent raise to $34,507.00 per year. Plaintiff believes she was terminated and denied other available positions because of her FMLA leaves, and because of her gender.

### III. APPLICABLE LAW & ANALYSIS

#### A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

    **B.**    **Count I:**    **FMLA**

        **1.**    **Interference/Entitlement**

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-week period if, among other things, the employee suffers from a serious health condition which prevents the employee from performing the functions of his or her position. *See* 29 U.S.C. § 2612(a)(1)(D). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Eligible employees who return to work within the twelve week period "are entitled to be reinstated to their previous position, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Edgar v. JAC Products, Inc*., 443 F. 3d 501, 506 (6th Cir. 2006) (citing 29 U.S.C. § 2614(a)(1)).

There are two theories by which an aggrieved plaintiff may recover under the FMLA; the

7

entitlement/interference theory and the retaliation/discrimination theory. *Id.* at 507; *Arban v. West Publishing Corp.*, 345 F. 3d 390, 400-01 (6th Cir. 2003). The entitlement theory arises out of sections 2615(a)(1) and 2614(a)(1) of the FMLA. Section 2615(a)(1) states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." 29 U.S.C. § 2615(a)(1). Section 2614(a)(1) states that "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position." 29 U.S.C. 2614(a)(1). If an employer interferes with either an employee's right to leave or reinstatement subsequent to the leave, he or she is liable under the FMLA. *See Arban*, 345 F. 3d at 401.

However, the right to reinstatement "shall not be construed to entitle any restored employee to . . . any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* (citing 29 U.S.C. § 2614 (a)(3)(B). As such, an employee may be lawfully terminated from employment and prevented from exercising his or her right to reinstatement, but only if the termination "would have occurred regardless of the employee's request for or taking FMLA leave." *Id.* (citing *Gunnell v. Utah Valley State Coll.*, 152 F. 3d 1253, 1262 (10th Cir. 1998). Defendant must demonstrate that Plaintiff's termination would have occurred even if she had not invoked her rights under the FMLA. *See* 29 C.F.R. § 825.216(a) (the employer has the burden of demonstrating that the "employee would not otherwise have been employed at the time reinstatement is requested . . . ." *Id.*)[3]

---

[3] The Court is aware of Defendant's contention that this regulation improperly allocates the burden to the employer, and that at least one circuit has so held, *see Rice v. Sunrise Express*, Inc., 209 F. 3d 1008, 1018 (7th Cir. 2000). However, the Court will follow the regulation's

8

In order to succeed on an entitlement/interference claim, Plaintiff must demonstrate that: (1) Plaintiff was an eligible employee, (2) Defendant was an employer as defined by the FMLA, (3) Plaintiff was entitled to leave under the FMLA, (4) Plaintiff gave Defendant notice of her intention to take leave, (5) Defendant denied Plaintiff the FMLA benefits to which she was entitled. *Id.*

The only element that the parties are in dispute over is the last one, or whether Plaintiff was denied the FMLA benefits she was entitled to. Defendant argues that due to its implementation of the 'My Menu Program' and dismal holiday sales in December 2007, it developed a need for a reduction in force. The Court finds that there is a genuine issue of material fact as to whether Plaintiff's termination "would have occurred regardless of [Plaintiff's] request for taking FMLA leave." *Arban*, 345 F. 3d at 401. The Court relies on the timing of the decision to eliminate Plaintiff's position. While Sysco relies on the fact that it was the dismal holiday sales in 2007 that led to the decision to terminate Plaintiff, McCausland began his analysis of the Marketing Department in November 2007. McCausland's analysis raises a genuine issue of fact as he admits that he did not save any of the supporting documentation for his decision to eliminate Plaintiff's position. McCausland testified that the reason for the decision was to save money, yet he could not testify, or refer to any financial analysis conducted regarding the cost-savings Defendant would realize with the elimination of Plaintiff's position.

In *Chester v. Quadco Rehabilitation Center*, 484 F. Supp. 2d 735 (N.D. Ohio 2007), the employer, similar to Defendant, presented evidence of its financial difficulties, that the employee's position duplicated the work of other positions, and that the elimination of the employee's position

---

language as the Eleventh and Tenth Circuit Court of Appeals have done when confronted with this issue. *See Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F. 3d 955, 963-64 (10th Cir. 2002); *O'Connor v. PCA Family Health Plan, Inc*., 200 F. 3d 1349 (11th Cir. 2000).

had been discussed and recommended prior to his FMLA leave. *Id.* at 738-39. The *Chester* court found genuine issues of fact regarding the employee's FMLA interference claim based in part on the fact that the prior recommendations to eliminate his position had not been acted upon until he submitted his FMLA leave request. *Id.* at 740-742. Similarly, it was known prior to Plaintiff's FMLA leave that the majority of her job duties had been outsourced, and McCausland began his analysis of the Marketing Department at the same time as Plaintiff began her FMLA leave, in late November of 2007.

As in *Arban* and *Moorer*, where the alleged reasons for terminating the employee were known to the employer prior to the employee taking FMLA leave, but the decision to terminate the employee was not made until the FMLA leave had been requested, the reasons for terminating Plaintiff's position, at least in part, were known to Sysco prior to her FMLA leave. *Arban*, 345 F. 3d at 401; *Moorer v. Baptist Memorial Health Care Sys.*, 398 F. 3d 469, 489-90 (6th Cir. 2005). All of the decisions regarding outsourcing were made prior to Plaintiff's FMLA leave. Additionally, while Defendant claims that most, if not all of, Plaintiff's work had been outsourced, when Plaintiff returned to work after her leave, she returned to a stack of work that had been left for her. Plaintiff's co-worker, Vanderzyl, indicated that she was very busy while Plaintiff was on leave. Further, just prior to Plaintiff going on FMLA leave, her workload had been busy, she had been working through lunches, and staying late to complete her projects. *See* Plf.'s Resp. Ex. A, Dep. Tr. of Julie Mastin at 124-25. There is a genuine issue of fact as to whether the majority of Plaintiff's duties had been dispensed with necessitating the elimination of her position as Sysco claims. There is also a genuine issue of fact as to whether Defendant failed to offer her available sales positions at the time of her termination. Defendant claims that Plaintiff expressed disinterest with the open sales position,

10

until she applied for the position on March 20, 2008. Plaintiff counters that she was told there were no open positions. As to Plaintiff's FMLA interference/entitlement claim, Defendant's Motion for Summary Judgment is DENIED.

**2. Retaliation**

Plaintiff also alleges that Defendant retaliated against her for exercising her FMLA rights. The burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies as Plaintiff relies on indirect evidence as proof of Defendant's retaliation. *See Skrjanc v. Great Lakes Power Service Co.*, 272 F. 3d 309, 313-16 (6th Cir. 2001). As such, Plaintiff must first establish a prima facie case, which requires that she prove that (1) she availed herself of a protected right under the FMLA by notifying Defendant of her intent to take leave, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. *Edgar*, 443 F. 3d at 508. If Plaintiff succeeds in proving her prima facie case, then the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for her termination. *Skrjanc*, 272 F. 3d at 315. Once Defendant provides a legitimate, nondiscriminatory reason for Plaintiff's termination, then Plaintiff must demonstrate that the reason is pretext. *Id.*

There can be no dispute that Plaintiff availed herself of a protected right under the FMLA by taking her leave and that she suffered an adverse employment action through her termination. Here, the issue is whether Plaintiff has presented sufficient evidence of a causal connection between the exercise of her rights under the FMLA and her termination. While Defendant would have this Court discount the fact that Plaintiff was terminated the day she returned from her FMLA leave, "[t]his temporal proximity is 'unduly suggestive' and is sufficient to establish a prima facie case of

11

discrimination . . . ." *Stephens v. Neighborhood Service Organization*, No. 07-11908, 2008 U.S. Dist. LEXIS 63279, *17 (E.D. Mich. August 19, 2008); *see also, Chester*, 484 F. Supp. at 744 (citing *Chandler, v. Specialty Tires of America (Tenn.) Inc*., 283 f. 3d 818, 826 (6th Cir. 2002, *Skrjanc*, 272 F. 3d at 317) ("The cases are clear: while temporal proximity alone is not enough to establish pretext, it is sufficient to show a causal connection.) Defendant has stated sufficient evidence of a legitimate, non-discriminatory reason for the elimination of Plaintiff's position: Plaintiff's duties had largely been outsourced and dismal holiday sales in 2007 led to Sysco's economic reduction in force.

The burden now shifts to Plaintiff to establish that Sysco's reduction in force was merely pretext for discrimination. A plaintiff may establish pretext by showing that the defendant's articulated legitimate, no-discriminatory reason (1) had no basis in fact, (2) was not the actual reason motivating the decision, or (3) was insufficient to justify the decision. *Carter v. University of Toledo*, 349 F. 3d 269, 274-75 (6th Cir. 2003). Similar to the facts supporting Plaintiff's entitlement/interference claim, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant's proffered reason for her termination was pretext. The timing of the decision, the lack of documentary support for the analysis conducted by McCausland, the lack of financial evidence indicating that elimination of her position would ultimately save the company money, the increase in salary to her co-worker, Vanderzyl, and the evidence that her workload and duties had not diminished at the time of her FMLA leave could lead a reasonable jury to conclude that Defendant's reason for terminating Plaintiff was pretext. As to Plaintiff's FMLA retaliation claim, Defendant's Motion for Summary Judgment is DENIED.

    **C.**    **Counts III & IV:**    **ELCRA & Title VII**

Plaintiff's gender discrimination claims under Title VII and the ELCRA are to be evaluated using the same *McDonnell Douglas* framework. *See Succarde v. Fed. Express Corp.*, 106 Fed. Appx. 335, 339 (6th Cir. 2004). Therefore, Plaintiff must first establish a prima facie case of discrimination by showing that (1) she is a member of a protected class, (2) she was qualified for her position, (3) despite her qualifications and performance, she suffered an adverse employment action, and (4) she was replaced by a person outside the protected class. *Id.* Plaintiff has established that she is a member of a protected class, that she was the subject of an adverse employment decision, that she was qualified for the position and that she was replaced by a person outside of the protected class because Defendant ultimately hired a male employee for the open sales position. Sysco has articulated a legitimate, non-discriminatory reason for Plaintiff's termination, specifically the alleged need for a reduction in work force due to dismal holiday sales and outsourcing of Plaintiff's duties. Similar to Plaintiff's FMLA claims, she has presented sufficient evidence demonstrating that questions of fact remain as to whether Defendant's proffered reason for the adverse employment decision is pretext designed to mask discrimination. Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and ELCRA claims is also DENIED.

## IV.  CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment [**Docket No. 14, filed on March 27, 2009**] is DENIED.

IT IF FURTHER ORDERED that a Status Conference on this matter shall be held on April 26, 2010 at 4:15 p.m.

IT IS SO ORDERED.

                                                            S/Denise Page Hood
                                                            Denise Page Hood
                                                            United States District Judge

Dated: March 24, 2010

      I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2010, by electronic and/or ordinary mail.

                                                             S/William F. Lewis
                                                             Case Manager